Filed 8/2/23  In re Miley G. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re MILEY G., a Person Coming Under the Juvenile Court Law. | B322215<br><br>(Los Angeles County Super. Ct. Nos. 22LJJP00189, 22LJJP00189A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>ROBERT A.,<br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie Davis, Judge.  Affirmed.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Robert A. (father) challenges the exercise of juvenile court jurisdiction over his newborn child, M.  M.'s mother tested positive for amphetamines at a prenatal visit; M.'s meconium[1] tested positive for morphine, indicating mother's use during pregnancy.  Father told the Los Angeles County Department of Children and Family Services (DCFS) that he had no idea mother used drugs, and that he had no serious history of drug use. In fact, father had convictions for possession of controlled substances and he had lost custody of an older child through the dependency system as a result of his drug abuse.  In addition, Father failed to appear for two drug tests requested by DCFS, and he did not provide an accurate address for DCFS to assess his home.  The juvenile court found a basis for jurisdiction over M. under Welfare and Institutions Code section 300, subdivision (b)(1)[2] based on mother's drug use, as well as father's history of drug use and the lack of any evidence suggesting that

---

[1]  Meconium "'consists of the secretions of the intestine and stomach, bile, etc., and it constitutes the first stools of the newborn infant.'"  (*In re S.K.* (2018) 22 Cal.App.5th 29, 32, fn. 2.)

[2]  All further statutory references are to the Welfare and Institutions Code.

father had addressed his substance abuse issues. Father filed a notice of appeal from the jurisdiction ruling before the disposition order was entered.

Because a jurisdiction order is not appealable, under California Rules of Court, rule 8.406(d), we treat father's notice of appeal as filed immediately after the disposition order. We also exercise our discretion to reach the merits of father's appeal, even though mother did not appeal and therefore the juvenile court's jurisdiction over M. will remain unchanged. On the merits of father's appeal, we reject his contention that the juvenile court's findings as to him were not supported by substantial evidence. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### A. Detention

According to the detention report, M. came to the attention of DCFS shortly after she was born in May 2022. Mother had tested positive for amphetamines at a prenatal visit on March 14, 2022. At the hospital, mother admitted to a children's social worker (CSW) that she had a long history of methamphetamine use; she said she had last used methamphetamine in March 2022. Mother said father did not know about her drug use, and she said father was not a drug user. Mother also reported that she had lost custody of other children as a result of her drug use. A CSW associated with previous cases involving mother's older children said that mother had a long history of drug abuse ("20 plus years") and domestic violence, resulting in mother losing custody of her older children.

---

[3] Father appealed and mother did not, so the background summarized here focuses on facts relevant to father's contentions.

3

The CSW also spoke with father at the hospital about drug use. Father said he had only experimented with marijuana, and he had last used marijuana seven months earlier. Father also said that he had been arrested in the past for theft. Father got upset when he learned of mother's positive drug test, and said, "Why am I being investigated? She's the one that is pregnant!" Father then walked out of the room. He nevertheless agreed to take a drug test the following day, May 7. Father said he and mother planned to live with their friend Mike, and agreed to have the home assessed by DCFS to determine if it was appropriate for a newborn. However, mother texted the CSW shortly after the interview and reported that she and father were planning to "take a break" from their relationship.

Previous DCFS history showed that in August 2014, father's older child, M.'s half-sibling, tested positive for methamphetamine and methadone at birth. Father was offered family reunification services and ordered to complete parenting classes, individual counseling, and a substance abuse program. Father had two positive drug tests, stopped contacting DCFS, and failed to complete his court-ordered services. Jurisdiction over the child was terminated in February 2016; sole legal and physical custody was granted to the child's mother. DCFS found that father also had an "extensive criminal history that involved drug related offenses." Father had several convictions including possession of a controlled substance, possession of controlled substance paraphernalia, and being under the influence of a controlled substance. He had registered as a controlled substances offender in 2016.

Mother was discharged from the hospital; M. had a medical issue that required her to remain hospitalized for several

additional days.  Father was a "no-show" for his drug test scheduled for May 7.  The CSW and father exchanged voicemail messages on May 10; father stated that he and mother were no longer in a relationship.  When the CSW went to the home where mother and father said they would be living, a man who refused to identify himself said, "No baby lives here or will live here." When the CSW attempted to call father on May 16, there was a message that father's voicemail was full.

M. was placed with a foster family upon her discharge from the hospital.  DCFS stated in its detention report that it had immediate safety concerns about M., since the parents did not have a stable living arrangement, both parents had a long history of substance abuse, both parents had lost custody of M.'s older half-siblings, and father failed to appear for his drug test.

On May 16, 2022, DCFS filed a juvenile dependency petition under section 300, subdivisions (b)(1) and (j).  Count b-1 alleged that mother had a history of drug abuse, was a registered controlled substances offender, had a criminal history involving drug-related convictions, and was current substance abuser, rendering her incapable caring for M.  Count j-1 included similar allegations regarding mother's history and substance abuse, and noted that mother's other children had been removed from her care due to her substance abuse. Count b-2, the only allegation involving father, alleged that father had a history of substance abuse and was a current user of marijuana, rendering him incapable of caring for M.

At the detention hearing on May 17, 2022, the juvenile court found a prima facie case to exercise jurisdiction over M. under section 300.  The court ordered that M. remain detained

from both parents, and ordered monitored visitation for both parents.

## B.     Jurisdiction

The jurisdiction/disposition report filed June 29, 2022 stated that M. remained with a foster family and was doing well. Mother was in an inpatient substance abuse treatment program. Mother told the CSW that she last used drugs in August 2021, and she had been clean for two years. Mother denied telling the CSW in the hospital that she had used drugs while pregnant with M. Mother also said she had been taking Adderall from someone else's prescription. The CSW asked mother why she entered a substance abuse program if she had been clean for years; mother said she wanted to address her problems and be a better mother. Mother stated that she had six older children in the dependency system with whom she had failed to reunify. DCFS noted in its report that M.'s meconium testing result had come in from the hospital, and it was positive for morphine.

The DCFS investigator met with father at the DCFS office on June 13, 2022. Father said he did not know mother used drugs in general, or while pregnant with M. Father stated that he also was not a drug abuser; he said he had abused marijuana in the past but he currently did not use it. However, father admitted that he was a registered controlled substances offender. Father said he and mother had been together for four years, and they wanted to "work out" their issues for the sake of M.

The investigator observed father with M. during a visit the same day; M. was comfortable with father and responded to his voice. Father was uncomfortable changing the baby's diaper and needed instructions from the CSW about how to clean her. Father "appeared to get bored caring for the newborn and ended

6

the visit early." Father was a "no-show" for another drug test on June 15, 2022.

While at the DCFS office on June 13, the investigator informed father that a home assessment was required. Father agreed to a home assessment on June 28. However, father did not respond to the CSW's attempts to confirm the appointment. When the CSW arrived at the address father provided, an unidentified man said that father was not there and did not live there, "He only comes around from time to time."

DCFS found M. to be at high risk for future abuse and neglect. It noted that mother and father each had a long history of substance abuse, M. had been exposed to methamphetamine and morphine in utero, and mother had received only limited prenatal care. DCFS noted that although mother and father had been together for four years, father claimed to know nothing of mother's drug use history while mother minimized her history, claimed to be clean for two years, and admitted using someone else's prescription Adderall. In addition, father had convictions for substance use and possession and was a registered controlled substances offender, yet he had denied any past use of substances other than marijuana. DCFS noted that father did not have any substance abuse-related criminal offenses since he had registered as a controlled substances offender. DCFS recommended that both parents be denied reunification services in light of the parents' failure to reunify with their respective older children.

At the jurisdiction hearing on July 13, 2022, father's counsel argued that father's criminal history regarding controlled substances was remote; his last conviction for possession of a controlled substance was in 2011. In addition, father's DCFS history with his older child occurred around 2015. Father's

counsel argued that this evidence of past issues did not support a current finding that father posed a risk to M. M.'s counsel asked that the petition be sustained, noting that father admitted recent marijuana use, had not drug tested for DCFS, and he had been hard to contact, so "we don't actually know what's going on with the father right now." DCFS's counsel also noted that father had not drug tested, and in light of the long-term relationship between mother and father and mother's drug use, "there is no current evidence" that father had "a sober lifestyle." Counsel for DCFS therefore also requested that the petition be sustained.

The juvenile court sustained counts b-1 and j-1, noting mother's long history of substance abuse, as well as her failure to reunify with her older children. As to father, the court noted that he did not show up for his two drug tests, there was no evidence that father had addressed his substance abuse issues, and "due to the child's tender age, that does place the child at a substantial risk of serious physical harm." The court therefore sustained count b-2 as amended to state that "[t]here is no current evidence that the father has addressed [h]is substantial substance abuse history."

The court set the disposition hearing for August 16. On the day of the jurisdiction hearing, July 13, 2022, father filed a notice of appeal from "[a]ll orders of July 13, 2022."

## DISCUSSION

### A.    Premature appeal

DCFS asserts that father's appeal should be dismissed because it is from a non-appealable order. DCFS is correct that the jurisdiction order is not appealable. "The first appealable order in a dependency case is the dispositional order. The jurisdictional order is not appealable; a challenge to the

8

jurisdictional findings must be raised in an appeal from the dispositional order." (*In re T.W.* (2011) 197 Cal.App.4th 723, 729.)

In his reply brief, father asks us to construe the notice of appeal as if it were from the disposition order. We have discretion to treat a premature notice of appeal "as filed immediately after the rendition of judgment or the making of the order." (Cal. Rules of Court, rule 8.406(d).) The "judgment" here is the disposition order. (See *In re Javier G.* (2005) 130 Cal.App.4th 1195, 1199 ["The dispositional order on an original petition (§ 300) is an appealable judgment"].) On our own motion, we take judicial notice that the juvenile court entered a disposition order on August 16, 2022. (Evid. Code, §§ 452, subd. (d), 459.) We therefore construe father's notice of appeal as being filed on that date.

However, we decline father's invitation to construe the substance of the notice of appeal to "include the findings and orders made at disposition." Based on his notice of appeal and appellate briefs, father clearly intended only to challenge the court's jurisdictional findings. There is no suggestion that the substance of the juvenile court's disposition order is at issue in this case. Moreover, father has not asked that the disposition order be included in the appellate record either by augmentation or through judicial notice. Thus, we construe father's notice of appeal to be timely rather than premature, but we do not construe it to challenge the substance of the disposition order.

## B.   Justiciability

DCFS next contends that father's appeal should be dismissed because the issue of jurisdiction is non-justiciable, correctly pointing out that "where jurisdictional findings have

9

been made as to both parents but only one parent brings a challenge, the appeal may be rendered moot." (*In re D.P.* (2023) 14 Cal.5th 266, 283.) Father acknowledges this, but asks that we nevertheless exercise our discretion to hear his appeal.

Appellate courts have "inherent discretion to decide certain challenges to juvenile court jurisdictional findings, notwithstanding mootness," where, for example, the jurisdiction finding could impact the future dependency proceedings or the child's placement. (*In re D.P.*, *supra*, 14 Cal.5th at p. 285.) When "the outcome of the appeal could be 'the difference between father's being an "offending" parent versus a "non-offending" parent,' a finding that could result in far-reaching consequences with respect to these and future dependency proceedings, [it may be] appropriate to exercise our discretion to consider the appeal on the merits." (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.) We therefore exercise our discretion to consider father's contentions on the merits.

## C.    Analysis

Father contends there was no evidence that his drug use placed M. at substantial risk of harm. "'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Under section 300, subdivision (b)(1), jurisdiction is appropriate when a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" the parent's "failure or inability . . . to adequately supervise or protect the child," or the parent's "inability . . . to provide regular care for the child due to . . . substance abuse."

Father does not dispute that he admitted using marijuana, but he argues there was no evidence that his substance use placed M. at risk. He argues that his drug-related convictions occurred more than a decade earlier, and the record did not reflect a positive drug test after 2015, when he tested positive in the dependency case with his older child. Father notes the juvenile court's finding that there was no evidence father had addressed his history of substance abuse, but father argues that "there is little import to be drawn from" this lack of evidence.

We are not persuaded. The court was entitled to rely on father's history to determine whether he was able to care for newborn M. "Evidence of past conduct may be probative of current conditions" if there is "'some reason beyond mere speculation to believe the alleged conduct will recur.'" (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.) Notably, father lied to DCFS about his substance use history, stating that he had only experimented with marijuana but not mentioning his drug-related criminal arrests, his registration as a controlled substances offender, or his failure to reunify with his older child as a result of drug abuse, despite being provided with family reunification services.

Moreover, the evidence about father's current ability to care for M. was limited because father failed to cooperate with DCFS. Father did not appear for two drug tests, and "a missed

11

drug test, without adequate justification, is 'properly considered the equivalent of a positive test result[.]'" (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384; see also *In re E.A.* (2018) 24 Cal.App.5th 648, 657, fn. 6 ["Common sense suggests that a parent who consistently refuses to drug test without an adequate explanation does so because he or she knows the results will show substance abuse"].) Father agreed to a home inspection, but when the CSW arrived at the given address, the man at the location said father did not live there. At the sole monitored visit with M. described in the record, father did not know how to change M.'s diaper, appeared to become bored with caring for her, and ended the visit early. None of this evidence suggests that father was able to care for newborn M., a child "'of such tender years that the absence of adequate supervision and care poses an inherent risk to [her] health and safety.'" (*In re Kadence P., supra*, 241 Cal.App.4th at p. 1384.)

"The court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) Here, where M. was exposed to methamphetamine and morphine in utero, father and mother both had extensive histories of drug abuse, father failed to appear for multiple drug tests, and father did not have a stable home where he could care for M., substantial evidence supported the juvenile court's exercise of jurisdiction over M. under section 300, subdivision (b)(1).

**DISPOSITION**

The juvenile court's July 13, 2022 order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


CURREY, P.J.


MORI, J.


13