Filed 3/12/25  In re J.V. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.V., A Person Coming Under the Juvenile Court Law. | B335937 (Los Angeles County Super. Ct. No. 23CCJP03530A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>A.V.,<br><br>        Defendant and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Commissioner.  Affirmed.

        Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, for Plaintiff and Respondent.

\* \* \* \* \* \*

A.V. (father) challenges the sufficiency of the evidence underlying the juvenile court's exertion of dependency jurisdiction over his infant daughter, J.V., and underlying the court's order removing her from his custody. Because the record contains sufficient evidence to support both orders, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

#### A.     *The family*

J.V. is the child of J.S. (mother) and father;[1] she was born in June 2023.

Father was released from a long stint in prison the year before, and onto a period of parole.

#### B.     *Evidence of father's recent use of substances*[2]

On July 29, 2023, father got into a fight with J.V.'s maternal grandfather; the maternal grandfather kicked father in the head several times, causing father to suffer a traumatic brain injury. The brain injury has caused his "memory" to be "messed

---

[1]     Mother has two other children by another father. Those children live with their father in Arizona, and are not a party to this juvenile dependency proceeding.

[2]     The paternal grandmother repeatedly stated that father used drugs, but the juvenile court found her to "lack credibility"; we accordingly do not recount her testimony.

2

up" and has caused "equilibrium issues," both of which preclude him from working.

Father did not show up for a drug test on August 25, 2023, and tested negative for any drugs on August 29, 2023.

In early September 2023, father was re-admitted to a hospital for two weeks with complications from his brain injury. In a urine test taken at the time of father's admission, he presumptively tested positive for fentanyl and methamphetamine. Father tested positive for fentanyl on September 19, 2023, which was after his release from the hospital; because father had been given fentanyl during his hospital stay, the positive test upon his discharge was not unexpected. However, ten days later, on September 29, 2023, father again tested positive for fentanyl, and the level of fentanyl was more than twice as high as ten days before, which indicated father had ingested fentanyl more recently (and hence not as part of any authorized treatment).

Father denied any drug use.

According to the Department's detention report, fentanyl "is an inherently dangerous drug . . . known to cause visual and auditory hallucinations, sleep deprivation, intense anger, volatile mood swings, agitation, paranoia, impulsivity, and depression."

Father was regularly administered "field test[s]" for drugs as part of his parole and consistently tested negative, but those tests did not test for fentanyl.

## II.  Procedural Background

On October 13, 2023, the Los Angeles Department of Children and Family Services (the Department) filed a petition seeking to exert dependency jurisdiction over J.V. on the grounds that father "has a history of substance abuse and is a current

abuser of fentanyl," and specifically alleged the September 19, 2023 and September 29, 2023 positive drug tests. The petition further alleged that this drug use "renders . . . father incapable of providing regular care and supervision" over J.V., who is of "a young age requiring constant care and supervision," and thus placed J.V. "at risk of serious physical harm, damage, [and] danger," which renders dependency jurisdiction appropriate under subdivision (b)(1) of Welfare and Institutions Code section 300.[3]

Although the Department opened its investigation in August 2023 and father spoke with a Department social worker on August 24, 2023, father thereafter made himself unavailable to the Department for any interviews or other contact, and declined to release his medical records for review.

After multiple continuances due to father's absence, the juvenile court held the jurisdictional and dispositional hearing on February 5, 2024. The court ruled that jurisdiction was appropriate because (1) father was a recent user of fentanyl and methamphetamine, as indicated by the presumptive test upon his re-admission to the hospital and by the higher level of fentanyl indicated in the September 29, 2023 test; and (2) father's use of these substances placed J.V. at risk of harm warranting removal as well as the exertion of jurisdiction because (a) father's lack of cooperation meant that he had "not demonstrated that . . . he is clean at this time"; (b) fentanyl is "an extraordinarily dangerous

---

[3] The petition also alleged that mother had "failed to protect" J.V., but the juvenile court dismissed that allegation and declared mother to be non-offending.

All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

drug"; (c) J.V. "is a very young child who requires constant care and supervision"; (d) father denied any drug use; and (e) father's drug use, "coupled" with his "very severe traumatic brain injury," "creates a concern [for] the court that it would not be safe or appropriate for the father to remain as a caregiver or have unmonitored contact with [J.V.] at this time." In light of these findings, the court interlineated the Department's petition, sustaining an amended allegation that father was "a recent user of fentanyl and methamphetamine" (rather than a "current abuser of fentanyl"); the court also struck the allegation regarding the September 19, 2023 positive drug test because it reflected the after-effects of the legally prescribed fentanyl he was administered while in the hospital. For the same reasons, the juvenile court also removed J.V. from father's custody, and placed her in the home of mother.

Father filed this timely appeal.

## DISCUSSION

Father argues that the juvenile court's jurisdictional and removal orders are not supported by substantial evidence. We review a juvenile court's jurisdictional and removal findings for substantial evidence, asking whether the record—when viewed as a whole and drawing all inferences in support of the court's findings—contains """"sufficient facts to support [that] finding[]."""" (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re R.T.* (2017) 3 Cal.5th 622, 633.)

## I. Exertion of Dependency Jurisdiction

A juvenile court may assert dependency jurisdiction over a child if the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" a parent's "inability . . . to provide regular care for the child

due to the parent's . . . substance abuse." (§ 300, subd. (b)(1)(D).) As pertinent here, this requires the Department to prove that "(1) substance abuse (2) makes a parent . . . unable to provide regular care for a child and (3) this inability . . . creates a substantial risk" "the child" may "suffer serious physical harm or illness." (*In re N.R.* (2023) 15 Cal.5th 520, 558 (*N.R.*); *In re N.M.* (2011) 197 Cal.App.4th 159, 165 [juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction"].)[4]

Substantial evidence supports the juvenile court's exertion of dependency jurisdiction over J.V.

Substantial evidence supports the juvenile court's finding that father was a "recent user" of fentanyl and methamphetamine: Father tested presumptively positive for fentanyl and methamphetamine when he was admitted to the hospital in early September 2023, and father's positive test for fentanyl on September 29, 2023 indicated that he had ingested fentanyl on his own after being discharged from the hospital.

Substantial evidence also supports the juvenile court's finding that father's substance abuse renders him unable to care for J.V. in a way that creates a substantial risk that J.V. may suffer serious physical harm or illness. The juvenile court's finding of risk rests on an amalgam of factors, each of which appropriately supports a heightened risk of harm. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025-1026 ["risk" should be "evaluat[ed]" by "consider[ing] the nature of the conduct and all

---

4    Jurisdiction may also be appropriate if the child has suffered such physical harm (*In re N.M*, *supra*, 197 Cal.App.4th at p. 165), but there is no evidence in this case (except for the evidence the trial court declared not to be credible) that J.V. has suffered any physical harm.

surrounding circumstances"].) Here, the court looked to the *nature* of fentanyl as a drug, and how it is "extraordinarily dangerous" because it is "known to cause visual and auditory hallucinations, sleep deprivation, intense anger, volatile mood swings, agitation, paranoia, impulsivity, and depression." (See *In re Stephen W.* (1990) 221 Cal.App.3d 629, 643 [considering the effects of heroin use on individuals]; cf. *In re B.D.* (2024) 103 Cal.App.5th 315, 330-331 [noting that "evidence about the effects or characteristics of prescription drug abuse" is relevant to assessment of risk].) The court also looked to father's denial of any drug use, to his failure to cooperate with the Department, and to his failure to provide any evidence demonstrating that he had otherwise ameliorated the risk associated with his drug use. (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision"]; *In re E.A.* (2018) 24 Cal.App.5th 648, 657, fn. 6 [parent who "stonewall[s]" by "refus[ing] to drug test" or "allow a home evaluation" cannot point to lack of evidence of current drug use or home conditions as a basis for denying jurisdiction, when reasonable inference is that denial is due to parent's desire to deny the Department access to what the parent believes will be evidence adverse to their position].) The court looked to J.V.'s young age, and how she would need constant care and supervision. (*N.R.*, *supra*, 15 Cal.5th at p. 558 ["It is reasonable for courts to infer that very young children require a substantial degree of close supervision"].) And the court, in the totality of the circumstances, looked to the additional limitations father encountered—in terms of his memory and equilibrium—arising from his brain injury.

7

Father's chief argument is that the juvenile court, by referring to J.V.'s young age, employed the "tender years presumption" that our Supreme Court explicitly rejected in *N.R.*, *supra*, 15 Cal.5th 520. This argument is incorrect factually and legally. Factually, the juvenile court cited *N.R.* and noted that it was "not using or supporting a tender years presumption"; instead, the court explained, it was looking to J.V.'s young age as one of many factors indicating a risk to J.V. due to father's substance abuse. Legally, *N.R.* rejected any *presumption* that a risk of harm to a young child should be presumed from a parent's substance abuse (*id.* at pp. 531-532, 550, 556-557), but *N.R.* also upheld the validity of an *inference* that younger children can be at a greater risk of harm due to a parent's drug use—and held that this inference, when combined with other evidence indicating risk—can support a finding of a substantial risk of harm (*id.* at pp. 558-559). *N.R.* held: "It is reasonable for courts to *infer* that very young children require a substantial degree of close supervision. But it is inappropriate to regard a parent's . . . excessive use of . . . an addictive drug as always being sufficient, *by itself*, to show that the parent . . . is unable to provide regular care for a young child and that the child is therefore at substantial risk of serious physical harm." (*Id.* at pp. 558-559, italics added.) Here, the juvenile court did what *N.R.* permits. Father additionally argues that the juvenile court adopted a "categorical rule" that traumatic brain injury is also sufficient to establish risk, but the court also did not rely solely on father's brain injury; instead, the juvenile court appropriately looked at the totality of factors bearing on the risk J.V. faced in father's care, and the interplay of those factors—including the brain injury—with father's substance abuse. (Cf. *In re G.B.* (2018) 28

8

Cal.App.5th 475, 485-486 [court may not amend petition to add entirely separate allegations unrelated to the original allegations].)[5]

## II. Removal of J.V. from Father's Custody

Once a juvenile court exerts dependency jurisdiction over a child, the court may remove the child from her parent if it finds, by clear and convincing evidence, that (1) "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the [child] if the [child] were returned home," and (2) "there are no reasonable means" short of removal "by which the [child's] physical health can be protected." (§ 361, subd. (c)(1); Cal. Rules of Court, rule 5.695(c)(1).) In light of the clear and convincing standard, our task is to ascertain whether substantial evidence supports the juvenile court's finding, by clear and convincing evidence, that removal was appropriate. (*In re V.L.* (2020) 54 Cal.App.5th 147, 155.)

Substantial evidence also supports the juvenile court's removal of J.V. from father's custody. The substantial evidence that supports the juvenile court's exercise of dependency jurisdiction also, on the facts of this case, supports the finding by clear and convincing evidence that J.V. faces a substantial danger of harm if left in father's custody. (See *In re Rocco M.* (1991) 1 Cal.App.4th 814, 826 ["[s]ince the evidence warranted a finding of substantial risk of serious physical injury, it also appears to have supported a finding under section 361 . . . of a substantial danger to the minor's physical health"].) Father's

---

[5] For the same reason, we reject father's further contention that the court was required to amend the petition to include an allegation that father's brain injury rendered father incapable of providing care to the child.

9

primary response is that the juvenile court misapplied *N.R.*; as explained above, we disagree.

## DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, P. J.

HOFFSTADT

We concur:

_____, J.

BAKER

_____, J.

KIM (D.)