Filed 7/26/22 In re Janessa A. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re JANESSA A., a Person Coming Under the Juvenile Court Law. | B312475<br>(Los Angeles County<br> Super. Ct. No. 20CCJP05683D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LORRAINE A. et al.,<br><br>    Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Linda L. Sun, Judge. Affirmed.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant, Lorraine A.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant, Faustino A.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

Lorraine A. (mother) and Faustino A. (father) appeal from orders in which their child, Janessa A., was declared a dependent of the court and removed from parental custody. Parents contend there is insufficient evidence to support the juvenile court's findings that Janessa was at risk of abuse or neglect based on prior sustained findings that mother had previously abused and neglected Janessa's older half-siblings, and based on father's use of marijuana. Parents also contend that the court erred by denying father's oral request to continue the disposition hearing. We reject parents' arguments and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

After Janessa was born in February 2021, the Los Angeles Department of Children and Family Services (DCFS) filed a 14-count petition on behalf of the child under Welfare and Institutions Code section 300.[1] In the petition, DCFS alleged that Janessa was at risk of suffering serious physical harm based on father's current marijuana use and history of substance abuse, and based on sustained findings in a prior dependency proceeding in which mother's children and Janessa's older half-siblings (Miguel L. Jr., Makaila L., and Leonel L.) were

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

declared dependents of the court.[2]  In the prior dependency case, the court found that mother had physically abused Miguel, Makaila, and Leonel; failed to make appropriate plans for the three children; placed Leonel in an endangering home environment; and allowed an "unidentified male companion" later identified as father to use marijuana inside the family home.

In a March 2021 detention report filed in this case, DCFS reported that Miguel, Makaila, and Leonel had observed mother and father use drugs.  In one undated incident, Leonel was sitting inside a car with "mother, father[] and a friend and the car would get very stuffy.  The child reported they were 'sniffing white stuff' while [Leonel] was . . . in the back seat" of the vehicle.  In another incident occurring in October 2020 (several months before Janessa's birth), Leonel was inside a car with parents when the car crashed into a dumpster.  According to Leonel, the car had crashed because mother and father were "high on drugs" and fighting each other.  Leonel further reported that mother and father abused drugs and alcohol "on a daily basis"; Leonel had to "collect cans to get money for food every day"; and parents had been living out of a car for the last two years.

As of the time DCFS filed its detention report, mother had inconsistently reported her housing situation and whereabouts.[3]  When

---

[2]  Miguel (born June 2008), Makaila (born March 2010), and Leonel (born October 2012), all share the same father, Miguel L. Sr.  Miguel, Makaila, and Leonel are not subject to this appeal.

[3]  When first interviewed in this case in February 2021, mother reported that she and father had been living with maternal grandmother since

initially interviewed for this case on February 11, 2021, mother denied abusing Janessa's half-siblings, and minimized the prior dependency case by stating that "she has an open case for being homeless." She also blamed the prior case on "coach[ing]" by the paternal side of Janessa's half-siblings. Nevertheless, mother informed DCFS that she was attending parenting and anger management meetings twice a week.[4] She also admitted that father smoked marijuana "probably once per week" outside the presence of Janessa.

Father denied having any criminal history during his interview in this case. While he admitted smoking marijuana "after work and before he goes to sleep," father stated that he kept marijuana out of the reach of children and did not care for Janessa while under the influence. When asked if he could provide the basic needs for Janessa on his own, father affirmed he was willing to care for the child, but stated that he "would need a lot of help" from his family.

Janessa was removed from parental custody and suitably placed in foster care on March 10, 2021. On March 17, 2021, the court detained Janessa, ordered monitored visitation and services for the parents (mother was to continue to comply with prior orders; father was

---

September 2020. In the prior dependency proceeding however, mother reported that she had either lived with maternal great-grandmother or lived with father and paternal grandparents.

[4] DCFS contacted mother's program on February 24, 2021, and was informed that while mother had enrolled in parenting and anger management programs, she had not attended any classes.

to be referred to his own services), and provided parents with housing resources and transportation assistance.

A combined jurisdiction/disposition hearing was conducted on May 6, 2021. In a jurisdiction/disposition report filed April 20, 2021, DCFS reported that mother continued to deny and minimize the sustained findings in her dependency case. Father also denied the sustained findings, stating that the reports of mother's prior abuse and neglect were "made up." In April 2021, father reported that he had abstained from using marijuana in the month prior (i.e. between March and April 2021).

DCFS provided the court with father's drug tests. Father tested positive for marijuana on October 26, 2020, and March 1, 2021 (3,679 ng/ml and greater than 4,000 ng/ml, respectively), and was a no show for testing on April 16 and April 29, 2021. On May 6, 2021, father stated that he was no longer using marijuana, as he had recently been prescribed medication for anxiety and depression.[5]

DCFS assessed Janessa to be at very high risk for future abuse based on mother's homelessness, prior dependency history, and lack of participation in services, and based on father's denial of substance abuse, positive drug test for high levels of marijuana, and his inability to care for the child on his own. To assist parents with housing, DCFS recommended that the court refer them to the Family Reunification

---

[5] In reports subsequently filed with the court, it was reported that father had not enrolled in any services, had tested positive for marijuana in May 2021, and was a no show for drug testing in June 2021.

Housing Subsidy (FRHS) program. However, because "the child['s] safety and well-being cannot be ensured without removing her from the care and custody of [her] parents," DCFS recommended that Janessa "be removed from the custody of the parents" and suitably placed in "out of home care."

Mother and father appeared at the May 17, 2021 jurisdiction/disposition hearing. After finding notice of the hearing to be proper, the court admitted various documents into evidence, including two letters confirming that in May 2021, mother completed parenting and anger management and attended one intake session and one individual therapy session.

During the hearing, counsel for both parents argued that DCFS failed to meet its burden of establishing a current risk to Janessa based on parents' conduct. The court sustained the petition as amended and declared Janessa a dependent of the court under section 300, subdivisions (b) and (j).[6] The court reasoned that mother had not resolved the issues necessitating court intervention in her prior dependency case, and father had not resolved his marijuana use at "significantly high level[s]."

Proceeding to disposition, mother's counsel requested that Janessa be placed in her care, and if needed, the court could order mother to live with maternal grandmother "or other DCFS-approved home." Father's counsel requested that Janessa either be placed with both parents in

---

[6] The court struck all of the subdivision (a) allegations, and all but one subdivision (b) allegation based on father's history of substance abuse.

6

maternal grandmother's home or placed with father there. Counsel continued: "So if the court is not going to return this child today, I think that perhaps the only appropriate thing to do would be, maybe, to put disposition over to either confirm an appropriate plan for the child to be returned either to the parents or to the mother or to put disposition over for this [FRHS program] referral to be ordered." Counsel for DCFS requested that Janessa be removed from parental custody.

The court removed Janessa from parental custody. The court found Janessa was at substantial risk of harm in parental custody due to parents' unstable housing, mother's unresolved issues from the prior dependency case, and father's unresolved substance abuse. The court also questioned whether maternal grandmother could adequately care for Janessa. In light of its findings, the court placed Janessa under the supervision of DCFS with an order to assess maternal grandmother's home for placement, and ordered reunification services, monitored visitation, and housing and transportation assistance for parents.

Mother and father filed timely notices of appeal from the jurisdiction and disposition orders. In subsequent reports filed with the juvenile court, DCFS reported that mother had made substantial progress in therapy. After liberalizing mother's visitation in June 2021, the court terminated its suitable placement order and ordered Janessa home of mother "on condition that mother's home is approved by DCFS."

## DISCUSSION

1. *Jurisdiction*

Parents challenge the sufficiency of the evidence to support the juvenile court's jurisdictional findings as to Janessa. Under section 300, subdivision (j), the juvenile court may exercise dependency jurisdiction over a child if "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected." The court "shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (*Ibid.*; see *In re I.J.* (2013) 56 Cal.4th 766, 774 (*I.J.*).)

Here, neither parent contests the fact that Janessa's older half-siblings were abused or neglected by mother. Instead, they contend only that substantial evidence does not support the court's finding that there was a substantial risk that Janessa would also be abused or neglected. (See *In re Ricardo L.* (2003) 109 Cal.App.4th 552, 566–569 [the fact a child's siblings are dependents of the court is alone insufficient to justify a jurisdiction under subd. (j)].) In their view, the court relied almost exclusively on the fact that parents were homeless, a ground which they contend is insufficient to support exercising jurisdiction.

"In a challenge to the sufficiency of the evidence to support a jurisdictional finding, the issue is whether there is evidence,

8

contradicted or uncontradicted, to support the finding.  In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order, resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences."  (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450–451 (*Alexis E.*).)  "Evidence of past conduct, without more, is insufficient to support a jurisdictional finding under section 300.  There must be some reason beyond mere speculation to believe the alleged conduct will recur."  (*In re James R.* (2009) 176 Cal.App.4th 129, 136 (*James R.*).)  But "'[t]he court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'"  (*I.J.*, *supra*, 56 Cal.4th at p. 773, quoting *In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

Contrary to parents' claim in this case, the juvenile court referred to various factors beyond parents' housing situation when exercising jurisdiction over Janessa under section 300, subdivision (j).  One of the factors considered was mother's prior acts of abusing and neglecting Janessa's older half-siblings.  In one incident occurring less than six months before Janessa was born, mother and father appeared high on drugs and crashed a car while Leonel was in their care.  "A parent's past conduct is a good predictor of future behavior."  (*In re T.V.* (2013) 217 Cal.App.4th 126, 133; *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.)

Yet another factor the court considered was mother's inability to fully address the issues necessitating the prior dependency case. Mother had made recent progress in parenting, anger management, and

individual therapy. But she also denied and minimized the prior sustained findings during several interviews with DCFS in this case, and was not forthright when reporting her attendance in court-ordered services. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197; *In re D.B.* (2018) 26 Cal.App.5th 320, 329–330 (*D.B.*); *In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"].)

By focusing on favorable evidence tending to establish she was not a danger to Janessa, mother essentially requests that we reweigh the evidence in her favor. (*Alexis E.*, *supra*, 171 Cal.App.4th at pp. 450–451.) Moreover, mother relies on inapposite authority that did not involve prior abuse or neglect of a child's sibling. (See, e.g., *James R.*, *supra*, 176 Cal.App.4th at p. 136 [mother "had not abused or neglected the minors in the past"]; *In re Ricardo L., supra,* 109 Cal.App.4th at pp. 567–569 [no evidence demonstrated parents' history of neglecting child's half-siblings]; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1399 [same].)

We also conclude that the record supports the jurisdictional finding that father's issues with marijuana use impaired his ability to appropriately care for Janessa, and that mother failed to protect the child from father's drug use. A court may exercise jurisdiction under section 300, subdivision (b)(1) if, among other things, "there is a substantial risk that [a] child will suffer[] serious physical harm or illness[] as a result of . . . the inability of the parent . . . to provide

10

regular care for the child due to the parent's . . . or substance abuse." (§ 300, subd. (b)(1); see *In re Travis C.* (2017) 13 Cal.App.5th 1219, 1225.)

Janessa's half-siblings had observed mother and father use drugs in their presence, and while appearing high on drugs in October 2020, parents crashed a car that was carrying Leonel, then an eight-year-old boy. The same month, father tested positive for "high" levels of marijuana. Then, in March and April 2021, father reported he had abstained from using marijuana, yet tested positive on March 1, 2021 and was a no show for testing on April 16 and April 29, 2021. (See *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217 [missed drug tests are "properly considered" the equivalent of positive test results]; *In re E.A.* (2018) 24 Cal.App.5th 648, 657, fn. 6 ["[c]ommon sense suggests that a parent who consistently refuses to drug test without an adequate explanation does so because he or she knows the results will show substance abuse"].) The foregoing amply supports the court's finding under section 300, subdivision (b), as to father's drug use and mother's failure to protect. (Accord, *In re Natalie A.* (2015) 243 Cal.App.4th 178, 186; *In re K.B.* (2021) 59 Cal.App.5th 593, 601–602; see *In re Travis C., supra,* 13 Cal.App.5th at p. 1226.) In sum, we conclude that substantial evidence supports the juvenile court's jurisdictional findings.

2.    *Disposition*

Parents also challenge the sufficiency of the evidence to support the disposition order removing Janessa from parental custody and suitably placing the child under the supervision of DCFS. Despite the court's

subsequent order returning the child to mother's custody after parents filed this appeal, we consider their contention on the merits.[7]

Before ordering a child removed from parental custody, the juvenile court must find by clear and convincing evidence that there is, or would be, a substantial danger to the child's physical health, safety, or well-being if the child were returned home, and there are no reasonable means by which the child's health could be protected without removal from parental custody.  (§ 361, subd. (c)(1).)

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention."  (*D.B., supra*, 26 Cal.App.5th at p. 332.)  The court "must also consider whether there are any reasonable protective measures and services that can be implemented to prevent the child's removal from the parent's physical custody."  (*Ibid.*)

We conclude that there is substantial evidence from which a reasonable factfinder could find it highly probable that returning Janessa to either offending parent posed a substantial danger to the child's health, safety, or well-being.  (See *Conservatorship of O.B.* (2020)

---

[7]     Following our initial review of the case, we requested briefing on whether the court's placement of Janessa in mother's care rendered parents' appeal from the disposition order moot.  We agree with parents' argument that their appeal from the disposition order is not moot.  (See *Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 164 ["if a parent has received at least 12 months" of reunification and maintenance services after the child's initial removal, "the court may set a section 366.26 hearing [if] it grants a section 387 petition removing a child from parental custody"].)

9 Cal.5th 989, 1011 [setting forth the standard of review for a finding of fact proved by clear and convincing evidence].)  In addition to the reasons for dependency jurisdiction addressed above (see *In re R.V., supra,* 208 Cal.App.4th at p. 849 [jurisdictional findings are prima facie evidence a child cannot safely remain in the home]), both mother's and father's living situation were demonstrably unstable.  Parents had not consistently lived in maternal grandmother's home, but had at various times lived out of a car, lived with paternal grandparents, and as most recently reported in May 2021 by Janessa's older half-siblings, both parents were renting a room together in a location unknown to DCFS.  Notwithstanding the foregoing, parents assert the court failed to determine whether placement of Janessa in their care in maternal grandmother's home was a reasonable means to prevent removal.  But parents fail to explain how such placement would ensure Janessa's safety.  At the time of disposition, maternal grandmother had not requested that Janessa be placed in her care, and there is no evidence establishing maternal grandmother's fitness to support a young child or her ability to provide the child with an adequate home.  (See §§ 361, subd. (c)(1)(B)(5), 361.2, subd. (e)(2), 361.4; see also *In re Eli F.* (1989) 212 Cal.App.3d 228, 239 ["the suitability of the placement must be reflected in the record of the proceedings before the juvenile court"].)  In sum, the court did not err by ordering Janessa removed from parental custody.

3.  *Continuance of the Disposition Hearing*

Finally, parents contend that the juvenile court erroneously denied an oral request by father's counsel to "maybe, to put disposition over." We disagree.

After exercising jurisdiction over a child, "the court shall hear evidence on the question of the proper disposition to be made of the child." (§ 358, subd. (a).) Evidence the court shall consider includes "the social study of the child made by the social worker, . . . and other relevant and material evidence as may be offered." (§ 358, subd. (b)(1).) The "social study and copies of it [must be sent] to the clerk at least 48 hours before the disposition hearing is set to begin, and the clerk must make the copies available to the parties and attorneys. A continuance within statutory time limits must be granted on the request of a party who has not been furnished a copy of the social study in accordance with this rule." (Cal. Rules of Court, rule 5.690(a)(2); accord, § 358, subd. (a) ["[p]rior to making a finding required by this section, the court may continue the hearing on its own motion, the motion of the parent or guardian, or the motion of the child"].)

Citing only the foregoing provisions, parents contend that the court was required to continue the disposition hearing because DCFS changed its recommendation during the disposition hearing without providing them notice of such change in recommendation. Specifically, parents allege that DCFS had only recommended housing assistance through the FRHS program in its jurisdiction/disposition report, and changed its recommendation to remove Janessa from parental custody at disposition.

14

DCFS contends, and we agree, that this argument is forfeited for the failure of either parent to request a continuance based on the failure of DCFS to provide parents with adequate notice.  (*In re P.A.* (2007) 155 Cal.App.4th 1197, 1209 [applying forfeiture on appeal "[b]ecause defective notice and the consequences flowing from it may easily be corrected if promptly raised in the juvenile court"]; accord, *In re A.B.* (2014) 225 Cal.App.4th 1358 (*A.B.*), 1366; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501–502.)

Even considering the merits, we reject parents' contention.  "We will reverse an order denying a continuance only upon a showing of abuse of discretion." (*A.B.*, *supra*, 225 Cal.App.4th at p. 1366.)  Parents do not dispute that they received timely notice of the jurisdiction/disposition report consistent with rule 5.690(a)(2) of the California Rules of Court.  In that report, DCFS suggested referring parents to the FRHS program, and also expressly stated that DCFS was recommending that Janessa "be removed from the custody of the parents" and suitably placed in "out of home care."  Having had adequate notice of DCFS's recommended disposition, parents have failed to demonstrate how the court abused its discretion by denying the oral request to continue the disposition hearing.

//

//

//

//

//

15

## DISPOSITION

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                    WILLHITE, J.

We concur:


MANELLA, P. J.


COLLINS, J.


16