Filed 3/5/24

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | C099115 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>   v.<br><br>J.S.,<br><br>        Defendant and Appellant. | (Super. Ct. No. 52009173) |

APPEAL from a judgment of the Superior Court of Placer County, Todd D. Irby, Judge. Reversed.

Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Kimberley A. Donohue, Supervising Deputy Attorney General, Craig S. Meyers, Deputy Attorney for Plaintiff and Respondent.

1

This case involves a question of statutory interpretation. Under California law, any person who "satisfactorily completes" a term of probation after classification as a ward of the juvenile court is entitled to have the juvenile wardship petition dismissed and to have all records pertaining to that petition sealed. (Welf. & Inst. Code, § 786, subd. (a)).[1] On appeal, J.S. challenges the order denying his motion requesting such relief. He argues the juvenile court erred by interpreting subdivision (c)(1) of section 786 as precluding relief as a matter of law when there is *any* new finding of wardship during the period of probation. He contends that because the statute precludes relief as a matter of law when there was a new finding of wardship (or conviction) based only on the commission of a felony offense or a misdemeanor involving moral turpitude, the court improperly concluded that he was categorically ineligible for relief because there was a new finding of wardship based on the commission of a misdemeanor battery.

We agree and therefore reverse. Because the juvenile court did not reach the issue of whether J.S. had otherwise "substantially compli[ed]" with the terms and conditions of his probation so as to be deemed to have satisfactorily completed it, we remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Given the limited issue raised on appeal, we briefly summarize the pertinent facts and procedure. The facts underlying the charged offenses are taken from the probation report. We recite the facts for background purposes only; they are not material to the resolution of this appeal.

*First Juvenile Wardship Petition*

In March 2021, the People filed a section 602 juvenile wardship petition, charging J.S. with six counts, including second degree robbery (Pen. Code, § 211) and misdemeanor battery (*id*., § 242). Three weeks later, in April 2021, a first amended

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

section 602 juvenile wardship petition was filed, adding one count against J.S. (battery with serious bodily injury (Pen. Code, § 243, subd. (d)) and a special allegation that J.S. personally inflicted great bodily injury in the commission of the battery (*id*., § 12022.7, subd. (a).) These charges arose out of two separate incidents in January and April 2021 where J.S. physically attacked and seriously harmed other minors.

In the first incident, which involved the taking of a guitar, J.S. punched a minor in the face and strangled and punched a second minor, who suffered a concussion. At the time the guitar was taken, J.S. was with three other juveniles. In the second incident, which occurred approximately three months later at school, J.S. repeatedly punched a minor in the face without provocation during class, causing injuries. This incident occurred three days after J.S. threatened to fight the victim because he threw a football that landed near J.S. J.S. was 13 years old at the time of the first incident and 14 years old at the time of second.

In May 2021, J.S. admitted to committing second degree robbery (Pen. Code, § 211), misdemeanor battery (*id*., § 242), and battery with serious bodily injury (*id*., § 243, subd. (d)), as well as the great bodily injury enhancement allegation (*id*., § 12022.7, subd. (a)). The remaining charges were dismissed at the People's request, and J.S. was released on home supervision.

In June 2021, J.S. was adjudged a ward of the juvenile court and placed on formal probation with various terms and conditions, including conditions requiring that he obey all laws and serve 15 days in a juvenile detention facility.

*Second Juvenile Wardship Petition*

Around 10 months later, in April 2022, the People filed a second section 602 juvenile wardship petition against J.S. In May 2022, J.S. was adjudged a ward of the juvenile court based on a finding that he committed a misdemeanor battery. (Pen. Code,

3

§ 242.)  It is undisputed that J.S. was on probation at the time the offense was committed. The record does not disclose the facts underlying the offense.[2]

*Termination of Probation and Sealing of Juvenile Records*

In February 2023, the probation department filed an application for dismissal of wardship, requesting the juvenile court dismiss the wardship and all proceedings instituted in the juvenile court against J.S.  In making this request, the probation department stated: "There is no apparent need for further supervision as satisfactory adjustment has been indicated.  All conditions set by the Court have been met, and the minor does not appear to require continued Wardship."  The probation department also requested that the records pertaining to *both* the first and second juvenile wardship petitions be sealed pursuant to section 786.  In doing so, the probation department noted that J.S. had "satisfactorily completed probation for purposes of . . . section 786."

In a written response, the People indicated that they had no objection to the "successful termination" of J.S.'s probation or to the sealing of records pertaining to the second juvenile wardship petition.  However, they objected to the sealing of records pertaining to the first juvenile wardship petition, arguing that such relief was not warranted because J.S. was "disqualified under . . . section 786(c)(1) in that he suffered a 'new finding of wardship . . . during the period of . . . probation.' "  (Emphasis omitted.) The People did not object to the sealing of these records on the ground that J.S. had failed to substantially comply with the reasonable orders of probation that were within his capacity to perform.

---

[2]  The second juvenile wardship petition is not included in the appellate record.  Nor does the record contain a reporter's transcript of any proceedings related to that petition, including the hearing in which J.S. was adjudged a ward of the juvenile court.  But the parties agree, and the record reflects, that J.S. was adjudged a ward of the court in May 2022 based on his commission of a misdemeanor battery, and that J.S. was on probation at the time he committed the offense.

At the March 2023 hearing on the probation department's application, the juvenile court terminated J.S.'s probation after finding successful completion and ordered that all records pertaining to the second juvenile wardship petition be sealed pursuant to section 786.[3] As for the request to seal records pertaining to the first juvenile wardship petition, the court took the matter under submission. During the hearing, J.S. argued that contrary to the People's contention, he was not categorically ineligible for relief with respect to this petition because although there was a new finding of wardship during the period of probation, misdemeanor battery is not a crime of moral turpitude and section 786 only precludes relief as a matter of law when the new finding of wardship was based on a felony offense or a misdemeanor involving moral turpitude.

*Motion to Seal Juvenile Records*

In June 2023, J.S. filed a motion to seal juvenile records under section 786, which sought an order dismissing the first juvenile wardship petition and sealing the records pertaining to that petition based on his satisfactory completion of probation. J.S. argued that such relief was warranted "pursuant to [section] 786(f) on the grounds that [he] had no new findings of wardship for a felony offense or a misdemeanor involving moral turpitude during the period of . . . probation."

Three days later, the juvenile court issued a written order denying J.S.'s motion. The court concluded that relief under section 786 was not warranted as a matter of law because there was a new finding of wardship during the period of probation. In so concluding, the court rejected J.S.'s interpretation of the statute, finding that contrary to J.S.'s contention, the plain language of section 786, subdivision (c)(1) provides *three* separate "disqualifying categories": "(1) 'no new findings of wardship' or (2) 'a felony offense' or (3) 'a misdemeanor involving moral turpitude.'" In other words, the court

---

[3] After the hearing, the juvenile court issued a written order dismissing the second juvenile wardship petition and sealing the records pertaining to that petition.

was not persuaded by J.S.'s construction of the statute; namely, that relief under section 786 is *not* precluded as a matter of law when, as here, there was a new finding of wardship during the period of probation that was *not based on a felony offense or a misdemeanor offense involving moral turpitude*. Instead, the court found that J.S. was categorically ineligible for relief due to his adjudication for misdemeanor battery.

*Appeal*

J.S. timely appealed.

## DISCUSSION

### I

*Interpretation of Section 786*

J.S. argues the juvenile court erred in concluding that he was categorically ineligible for relief under section 786 due to *any* new finding of wardship during his period of probation. He argues the statute is properly interpreted as precluding relief only when there was a new finding of wardship (or conviction) based on a felony offense or a misdemeanor involving moral turpitude. We agree.

A. *Standard of Review and Applicable Legal Principles*

"Normally, we review a juvenile court's decision to seal or to refuse to seal records for abuse of discretion. [Citation.] But where, as here, the court's decision raises an issue of statutory interpretation, our review is de novo." (*In re D.H.* (2020) 58 Cal.App.5th 44, 51.)

" ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.] "We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." [Citations.] The plain meaning controls if there is no ambiguity in the statutory language. [Citation.] If, however, "the statutory language may reasonably

6

be given more than one interpretation, ' " 'courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' " ' " ' " (*Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198.) "In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)

A remedial statute " 'should be broadly and liberally construed to promote the underlying legislative goals.' " (*In re C.L.* (2023) 96 Cal.App.5th 377, 384; see *Pulliam v. HNL Automotive Inc.* (2022) 13 Cal.5th 127, 137 ["We ' "must construe [remedial provisions] broadly, not . . . restrictively" ' [citation], ' "so as to afford all the relief" that their "language . . . indicates . . . the Legislature intended to grant" ' "]; *Takiguchi v. Venetian Condominiums Maintenance Corp.* (2023) 90 Cal.App.5th 880, 895 ["A remedial statute should be liberally construed to effectuate its object and purpose, and to suppress the mischief at which it is directed"].) "A remedial statute is one which provides a means for the enforcement of a right or the redress of a wrong." (*Takiguchi*, at p. 895.)

Section 786, subdivision (a), provides, in pertinent part: "If a person who has been . . . found to be a ward of the juvenile court satisfactorily completes . . . a term of probation for any offense, the court shall order the petition dismissed. The court shall order sealed all records pertaining to the dismissed petition in the custody of the juvenile court, and in the custody of law enforcement agencies, the probation department, or the Department of Justice." After the petition has been dismissed, "the arrest and other proceedings in the case shall be deemed not to have occurred and the person who was the subject of the petition may reply accordingly to an inquiry by employers, educational institutions, or other persons or entities regarding the arrest and proceedings in the case." (*Id.*, subd. (b).)

7

For purposes of section 786, a person "satisfactorily completes" a term of probation if two conditions are satisfied: (1) "the person has no new findings of wardship or conviction for a felony offense or a misdemeanor involving moral turpitude during the period of . . . probation"; and (2) "the person has not failed to substantially comply with the reasonable orders of . . . probation that are within their capacity to perform." (*Id.*, subd. (c)(1).) "Substantial compliance is not perfect compliance. Substantial compliance is commonly understood to mean 'compliance with the substantial or essential requirements of something (as a statute or contract) that satisfies its purpose or objective even though its formal requirements are not complied with.' " (*In re A.V.* (2017) 11 Cal.App.5th 697, 709.)

The juvenile court, in making its order to seal the record and dismiss "the instant" juvenile wardship petition pursuant to section 786, is authorized to dismiss any prior petition and seal the records pertaining thereto that "appear[s] to the satisfaction of the court to meet the sealing and dismissal criteria" and, upon request by an individual, to seal a record pertaining to an eligible record that is in the custody of a public agency other than a law enforcement agency, the probation department, or the Department of Justice, "if the court determines that sealing the additional record will promote the successful reentry and rehabilitation of the individual." (§ 786, subd. (f)(1), (2).)

The aim of section 786 is "to provide a streamlined sealing process" for persons who satisfactorily complete a term of probation after a delinquency petition has been filed. (*In re G.F.* (2017) 12 Cal.App.5th 1, 7.) "The procedure adopted in section 786 was perceived as an antidote to the more cumbersome procedure for sealing dismissed petitions set forth in section 781.[4] The purpose of section 786 is to speed up and

---

**4** Section 781 is sometimes referred to as the "older" sealing statute. (See *In re A.V.*, *supra*, 11 Cal.App.5th at p. 708.) It provides that five years or more after the jurisdiction of the juvenile court has terminated over a person adjudged a ward of the court or after a

8

facilitate the reentry into mainstream society, rehabilitation, and employability of juveniles with nonserious, nonviolent delinquency histories." (*In re A.V.*, *supra*, 11 Cal.App.5th at p. 711, fn. added.)

B. *Analysis*

Here, the sole issue we must decide is whether the juvenile court properly determined, as a matter of law, that J.S. was not entitled to relief under section 786 because he did not "satisfactorily complete[]" a term of probation. Resolution of this issue turns on the meaning of the following language in subdivision (c)(1) of section 786: "For purposes of this section, satisfactory completion of . . . probation . . . shall be deemed to have occurred *if the person has no new findings of wardship or conviction for a felony offense or a misdemeanor involving moral turpitude during the period of . . . probation . . . .*" (Italics added.) As we have outlined above, the juvenile court concluded that the plain language of this provision precludes relief where, as here, there was *any* new finding of wardship during the period of probation. J.S. disagrees with this construction of the statute, arguing the statute only precludes relief when there was a new finding of wardship (or conviction) during the period of probation that was based on the commission of a felony offense or a misdemeanor involving moral turpitude. Thus, according to J.S., because misdemeanor battery is not a crime involving moral turpitude (*People v. Lopez* (2005) 129 Cal.App.4th 1508, 1522; *People v. Mansfield* (1988) 200 Cal.App.3d 82, 88), reversal is required.

"The plain and ordinary meaning of the word 'or' is well established. When used in a statute, the word 'or' indicates an intention to designate separate, disjunctive categories." (*Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 30; see also

minor appeared before a probation officer, or, in any case, at any time after the person has reached the age of 18, the person or county probation officer, with specified exceptions, may petition the juvenile court for sealing of the records, including arrest records, relating to the person's case, in the custody of the juvenile court, the probation officer, or any other agency or public official. (§ 781, subd. (a).)

*In re Jesusa V.* (2004) 32 Cal.4th 588, 622 [" 'In its ordinary sense, the function of the word "or" is to mark an alternative such as "either this or that" ' "].)  Applied here, a straightforward reading of section 786, subdivision (c)(1) arguably supports the juvenile court's interpretation.  However, this provision is also reasonably susceptible to the alternative construction advanced by J.S.  By using the word "conviction" following the disjunctive "or," the Legislature clearly signified that a conviction in an adult criminal prosecution for a felony offense or misdemeanor involving moral turpitude during the period of probation constituted a separate category precluding relief under section 786.[5]

The question we must resolve here is whether the qualifying language that applies to an adult criminal conviction--namely, that it must be for a felony offense or misdemeanor involving moral turpitude during the period of probation--also applies to a new finding of wardship.  The statutory language is ambiguous on this point, especially since the statutory alternatives identified by the Legislature (new finding of wardship or conviction) are not separated by punctuation, such as commas or a semicolon.  (See *In re E.A.* (2018) 24 Cal.App.5th 648, 661 ["Punctuation by a semicolon 'is indicative of a

---

[5]  It is well settled that "[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."  (§ 203; see *People v. Hayes* (1990) 52 Cal.3d 577, 633 [juvenile court adjudications under section 602 are not criminal convictions].)  Further, numerous cases have explained that juvenile delinquency proceedings and adult criminal prosecutions are different in kind, such that the former do not qualify as convictions.  (See, e.g., *People v. West* (1984) 154 Cal.App.3d 100, 107-108 [a distinction is made between criminal convictions and juvenile adjudications because of the fundamentally different purposes the two bodies of law are designed to serve; juvenile court proceedings are designed for the rehabilitation of minors and not punishment while the purpose of imprisonment pursuant to the criminal law is punishment]; *In re Joseph B.* (1983) 34 Cal.3d 952, 955 ["[M]inors charged with violations of the Juvenile Court Law are not 'defendants.'  They do not 'plead guilty,' but admit the allegations of a petition. Moreover, 'adjudications of juvenile wrongdoing are not "criminal convictions" ' "].)

complete thought in one clause separate from the other clauses of the statute' "].) As such, we turn to extrinsic aids to determine the intent of the Legislature.

We begin with the legislative history of section 786, which, effective January 1, 2015, was added to the Welfare and Institutions Code by Senate Bill No. 1038 (2013-2014 Reg. Sess.) (Senate Bill No. 1038). (Stats. 2014, ch. 249, § 2.) As relevant here, the original version of section 786 (consisting of one paragraph) stated: "If the minor satisfactorily completes . . . a term of probation for any offense not listed in subdivision (b) of Section 707,[6] the court shall order the petition dismissed, and the arrest upon which the judgment was deferred shall be deemed not to have occurred. The court shall order sealed all records pertaining to that dismissed petition in the custody of the juvenile court, except that the prosecuting attorney and the probation department of any county shall have access to these records after they are sealed for the limited purpose of determining whether the minor is eligible for deferred entry of judgment pursuant to Section 790." (Stats. 2014, ch. 249, § 2, fn. added.) The Legislative Counsel's Digest explained: "Existing law [(i.e., section 781)] authorizes a person who is the subject of a juvenile court record and other specified persons to petition the court for the sealing of the records relating to the person's case at any time after the person reaches 18 years of age, as specified. . . . [¶] This bill would additionally require the juvenile court to order the petition of a minor who is subject to the jurisdiction of the court dismissed if the minor satisfactorily completes a term of probation, as specified. The bill would require the court to seal all records in the custody of the juvenile court pertaining to that dismissed petition or a petition dismissed upon satisfactory completion of a program of supervision. . . ." (Legis. Counsel's Dig., Sen. Bill No. 1038 (2013-2014 Reg. Sess.) Stats. 2014, ch. 249.) The bill's author explained that Senate Bill No. 1038 was enacted to address a "serious

---

**6** The offenses listed in section 707, subdivision (b) include serious and violent felonies, such as murder, arson, robbery, and rape.

11

shortcoming of our juvenile justice system." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1038 (2013-2014 Reg. Sess.) as amended Mar. 28, 2014, p. 7.) Because existing procedures under current law required the participation of the probation department, the prosecutor, and the court, the process for sealing juvenile records often involved "lengthy delays as well as significant costs associated with sealing." (*Ibid*.) In addition, "many youth are unaware of their right to seal their juvenile record, or are unable to complete the process due to procedural, logistical or financial barriers." (*Ibid*.) Senate Bill No. 1038 sought to remedy this problem by "streamlining the process for sealing a juvenile's record and removing the arbitrary age limit of 21 for filing a dismissal petition." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1038, *supra*, as amended Mar. 28, 2014, p. 7.) The stated purpose of the bill was to (1) "provide for the automatic dismissal of juvenile petitions and sealing of records in non-707(b) cases where a juvenile offender successfully completes probation, as specified"; and (2) "authorize the juvenile court to dismiss a delinquency petition after a person reaches the age of 21, as specified." (*Ibid*.)

As explained by the bill's author, Senate Bill No. 1038 would " 'further the dual purposes of the juvenile justice system: rehabilitation and reintegration, by better ensuring that juveniles have a clear pathway to clearing their records, when in compliance with existing statutory and probationary requirements. The bill recognizes the established role of California's Juvenile Courts as institutions of reform, not punishment, and will help individuals with juvenile records to find and hold jobs, and become fully functioning members of society. [¶] Overwhelming research in the field of adolescent behavior indicates that developmental changes occurring during adolescence often make it difficult for juveniles to properly understand the consequences of their actions. It is therefore essential that as many youth as possible receive a second chance at rehabilitation, since young people can often turn their lives around before it is too late. SB 1038 will give them a second chance at a clean slate when pursuing higher education or entering the workforce, two of the best ways to ensure that a youthful offender does not return to the

12

care of the State as an adult criminal later in life.' " (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1038, *supra*, as amended Mar. 28, 2014, p. 7.) The bill's author further explained: "SB 1038 will help individuals with juvenile records to find and hold jobs, and become fully functioning members of society. The bill will create a pathway for automatic sealing of a juvenile's record for individuals who have complied with all existing statutory and probationary requirements." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1038 (2013-2014 Reg. Sess.) as amended Mar. 28, 2014.)

Effective January 1, 2016, section 786 was amended by Assembly Bill No. 666 (2015-2016 Reg. Sess.) (Stats. 2015, ch. 368, § 1) (Assembly Bill No. 666) and Assembly Bill No. 989 (2015-2016 Reg. Sess.) (Stats. 2015, ch. 375, § 1.5.)[7] As relevant here, the Legislature amended the original version of section 786, now codified at section 786, subdivision (a), by eliminating the language that categorically precluded relief to minors on probation for an offense listed in subdivision (b) of section 707, and added a provision precluding relief if the petition was sustained based on the commission of such an offense that was committed when the individual was 14 years of age or older, unless the finding on that offense was dismissed or was reduced to a lesser offense that is not listed in subdivision (b) of Section 707.[8] (Stats. 2015, ch. 368, § 1; see § 786, subds. (a), (d).)

With respect to the specific issue under consideration here, Assembly Bill No. 666 added section 786, subdivision (c)(1), which requires that "satisfactory completion" of

---

[7] "Assembly Bill No. 989 (2015-2016 Reg. Sess.) primarily addressed who may access sealed records, and under what circumstances they may do so." (*In re A.V.*, *supra*, 11 Cal.App.5th at p. 709, fn. 4.)

[8] In the trial court, the People did not argue that this provision applied to J.S. The record reflects that J.S. admitted to committing the robbery count charged in the first juvenile wardship petition. Although this is an offense listed in subdivision (b) of section 707, J.S. was 13 years old at the time it was committed.

13

probation "shall be deemed to have occurred if the person has no new findings of wardship or conviction for a felony offense or a misdemeanor involving moral turpitude during the period of . . . probation and if he or she has not failed to substantially comply with the reasonable orders of . . . probation that are within his or her capacity to perform." (Stats. 2015, ch. 368, § 1; see § 786, subd. (c)(1).) According to the bill's author: " 'AB 666 clarifies and amends Section 786 . . . , added last year by . . . SB 1038. SB 1038 provided for the automatic sealing of court records and auto-dismissal of charges upon satisfactory completion of . . . probation by juveniles with non-violent/non-serious ("non 707") offenses. Since enactment of SB 1038 problems have arisen with the implementation of the statute. AB 666 seeks [to] break down the barriers to achieving the goals set out in SB 1038.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 666 (2015-2016 Reg. Sess.) as amended Sept. 4, 2015, p. 7.) The bill's author further stated: " 'AB 666 is an important measure that can reduce recidivism and open doors to jobs and education for many of California youth. The goal is to open pathways to college and jobs for justice-involved youth whose criminal records and histories stand in the way of employment and other re-entry opportunities. SB 1038 . . . revised the central policy and process for the sealing and dismissal of charges in non-violent juvenile delinquency cases. However, in the past few months experience in the courts has revealed implementation concerns. If passed AB 666 will provide for statewide standards for the courts and ensure access of youth to jobs and higher education.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 666 (2015-2016 Reg. Sess.) as amended Sept. 4, 2015.)

As stated by the bill's sponsor, "AB 666 provides guidance to courts by adding a definition of 'satisfactory completion,' " and "retains the SB 1038 limitation that the record cannot be sealed under Section 786 where the presenting offense is a serious or violent felony listed in subdivision (b) of Section 707 (offenses that are the basis for prosecution of juveniles in adult criminal court)," which is the same exclusion that appears

14

in Section 781, "the extant [(i.e., existing)] 'sealing by petition' code section." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 666 (2015-2016 Reg. Sess.) June 23, 2015, p. 7.) As for what constitutes "satisfactory completion" of probation under section 786, the sponsor of Assembly Bill No. 666 recommended that "satisfactory completion" be defined utilizing two criteria. " '*First (drawing from WIC Section 781, the "older" sealing statute) that the individual not have been adjudicated or convicted for a new felony or misdemeanor involving moral turpitude during the period of supervision.* Second, that the person did not fail substantially to comply with the reasonable orders of probation that were within his or her capacity to perform. This latter criterion is viewed as providing a "passing grade" standard for "satisfactory" completion. Many probation orders in delinquency cases are checklists of conditions that are difficult or impossible for many adolescents to perform at an "A" grade level-including such conditions as "must attend all school classes" and "must obey all orders of parents or guardian." On occasion, children on probation backslide by perhaps failing a drug test or skipping an appointment—but this does not mean that they cannot or do not rebound to a level of satisfactory overall performance. . . . [¶] Our goal, after all, is to support the re-entry, rehabilitation and employability of juveniles having justice system histories, and not to impose lifetime barriers to success based on probation performance criteria that are too rigid or unrealistic from an adolescent development perspective.' " (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 666 (2015-2016 Reg. Sess.) as amended Apr. 9, 2015, p. 6, italics added.)

At the time Assembly Bill No. 666 was enacted, the "older" sealing statute--section 781--provided, in pertinent part: "In any case in which a petition has been filed with a juvenile court to commence proceedings to adjudge a person a ward of the court, . . . the person or the county probation officer may, five years or more after the jurisdiction of the juvenile court has terminated as to the person, . . . or, in any case, at any time after the person has reached the age of 18 years, petition the court for sealing of the records. . . . If,

15

after hearing, the court finds that since the termination of jurisdiction . . . he or she has not been *convicted of a felony or of any misdemeanor involving moral turpitude* and that rehabilitation has been attained to the satisfaction of the court, it shall order all records, papers, and exhibits in the person's case in the custody of the juvenile court sealed . . . ." (Stats. 2013, ch. 269, § 1, italics added.) The italicized language has not been modified since the enactment of Assembly Bill No. 666. (See § 781, subd. (a)(1)(A).)

Having examined the statutory scheme encompassing section 786 and the legislative history of the statute, we conclude the juvenile court erred by interpreting subdivision (c)(1) as precluding relief as a matter of law when there is *any* new finding of wardship during the period of probation. Instead, this provision is properly construed as categorically precluding relief if, during the period of probation, the person seeking relief under section 786 either suffered: (1) a new finding of wardship (i.e., adjudication) for a felony offense or a misdemeanor involving moral turpitude; or (2) a conviction for a felony offense or a misdemeanor involving moral turpitude. Our conclusion is supported by the plain and ordinary meaning of the language in section 786, subdivision (c)(1), the recommendation of the sponsor of the bill adding that provision to the Welfare and Institutions Code, the remedial legislative purpose underlying section 786 as evidenced by the legislative history (i.e., rehabilitation and reintegration into society for juveniles who have complied with probationary requirements), and the text of the related, older sealing statute (§ 781), which only categorically precludes relief when the person has suffered a conviction for a felony or misdemeanor involving moral turpitude.

The People offer no legal analysis supporting a contrary result. They have made no effort to convince us, through statutory analysis or discussion of legislative history, that a different construction of section 786 should apply. Instead, they argue the juvenile court did not err in denying relief under section 786 because J.S. did not satisfactorily complete a term of probation, since he "failed to obey all laws by admitting to committing another battery while on probation." In making this argument, the People frame the issue on

16

appeal as whether the juvenile court abused its discretion "by finding that appellant had failed to substantially comply with a central requirement of his probation, i.e., obeying all laws." As J.S. correctly points out, the juvenile court never made any such finding, either explicitly or implicitly. Rather, as discussed *ante*, the juvenile court determined that J.S. was categorically ineligible for relief under section 786, subdivision (c)(1) because there was a new finding of wardship during the period of probation. Contrary to the People's suggestion, the juvenile court did not determine whether J.S. had met the other requirement of the statute--substantial compliance with the conditions of probation. (See § 786, subd. (c)(1).) Indeed, as J.S. notes, in the juvenile court there seemed to be general agreement that he *had* substantially complied with the terms of probation.

There is simply nothing in the language of the statute or its legislative history evincing an intent on the part of the Legislature to broadly preclude relief under section 786 by making a person categorically ineligible for relief when there is *any* new finding of wardship during the period of probation, as the juvenile court found. The remedial purpose underlying the statute--"to speed up and facilitate the reentry into mainstream society, rehabilitation, and employability of juveniles with nonserious, nonviolent delinquency histories" (*In re A.V., supra*, 11 Cal.App.5th at p. 711)--would be frustrated were we to adopt the juvenile court's construction of the statute. The legislative history makes clear that the Legislature intended to allow as many youths as possible to receive a second chance at rehabilitation and a clean slate when pursuing higher education or entering the workforce. This policy goal would be defeated by construing the statute as precluding relief under section 786 if there is *any* new finding of wardship during the period of probation, such as a wardship finding based on the commission of a misdemeanor offense or other nonserious/nonviolent offense. As J.S. correctly notes, a minor may be adjudged a ward of the juvenile court for, among other things, habitually refusing to obey the directions of their parents or for having four truancies within one school year. (See § 601, subds. (a), (b).) Nothing in the legislative history or statutory

17

scheme encompassing section 786 evinces a legislative intent to categorically preclude relief under section 786 based on such a new wardship finding, and such a finding is not in any way comparable to a conviction for a felony or crime of moral turpitude. In short, we adopt a construction of the statute that best comports with the intent of the Legislature and avoids a construction inconsistent with the statute's remedial purpose.[9]

## II

### *Remedy*

The remaining issue we must decide is the proper remedy. As previously indicated, any person who satisfactorily completes probation after being found a ward of the juvenile court is entitled to have the juvenile wardship petition dismissed and to have all records pertaining to that petition sealed. (§ 786, subd. (a).) Under section 786, "satisfactory complet[ion]" of probation "shall be deemed to have occurred if the person has no new findings of wardship or conviction for a felony offense or a misdemeanor

---

[9] We note that our interpretation of section 786 is consistent with a recent opinion issued by another panel of this court, *In re K.B.* (2024) 99 Cal.App.5th 348, although our analysis differs. In that case, minor K.B. challenged the juvenile court's order denying his request, brought pursuant to section 786, to dismiss a juvenile wardship petition and seal records pertaining to his commission of several criminal offenses, for which the juvenile court had adjudged him a ward of the court and placed him on probation. (*Id.* at p. 351.) On appeal, K.B. argued the juvenile court erred because he met the requirements for "satisfactory completion" of probation, notwithstanding his subsequent admission to an infraction during the period of probation. (*Ibid.*) K.B. claimed the juvenile court misinterpreted section 786, subdivision (c)(1) in the same manner as occurred here. (See *id.* at pp. 351-352.) In reversing, the *K.B.* court rejected the juvenile court's construction of the statute, namely, that the limiting phrase "for a felony offense or a misdemeanor involving moral turpitude" applies only to adult convictions and not to juvenile wardship adjudications, and therefore any juvenile adjudication, even an infraction, precludes satisfactory completion of probation. (*Id.* at pp. 352-353.) As we conclude here, the *K.B.* court decided this limiting phrase applies *equally* to juvenile wardship adjudications and adult convictions. (*Id.* at p. 352.) Although the analysis in *K.B.* differs from ours, no doubt in large part because of different arguments and emphases in the respective cases' briefing, we agree with the outcome reached by the *K.B.* panel.

involving moral turpitude during the period of . . . probation *and if the person has not failed to substantially comply with the reasonable orders of . . . probation that are within their capacity to perform.*" (*Id.*, subd. (c)(1), italics added.)

Here, the juvenile court did not make any findings concerning substantial compliance. Instead, as detailed *ante*, the court denied J.S.'s motion to seal juvenile records pertaining to the first wardship petition based on the court's (erroneous) determination that J.S. was categorically ineligible for relief under section 786. On this record, we conclude that remand for further proceedings is warranted. The record reflects that the juvenile court was unaware of its discretion to grant the relief requested by J.S. Accordingly, we will remand the matter to allow the juvenile court to exercise its discretion. (See, e.g., *People v. McDaniels* (2018) 22 Cal.App.5th 420, 426-428 [ordering remand for resentencing where trial court unaware of its sentencing discretion].)

## DISPOSITION

The juvenile court's order denying J.S.'s motion to seal juvenile records pursuant to section 786 is reversed. The matter is remanded for further proceedings consistent with this opinion.

/s/
Duarte, J.

We concur:

/s/
Robie, Acting P. J.

/s/
Ashworth, J.*

---

* Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19