Filed 9/5/24  D.L. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| D.L., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F088290 <br><br> (Super. Ct. No. 23CEJ300180-1) <br><br><br> **OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Kimberly Nystrom-Geist, Judge.

Lusine M. Vardanova, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Real Party in Interest.

---

[*]        Before Detjen, Acting P. J., Franson, J. and Peña, J.

-ooOoo-

D.L. (father) petitions this court for extraordinary writ relief (Cal. Rules of Court, rule 8.452)[1] seeking review of the juvenile court's jurisdictional and dispositional orders made June 20, 2024.  Specially, father challenges the jurisdictional findings over his children, D.L. and A.C., under Welfare and Institutions Code section 300, subdivisions (d) and (g)[2], denying his request to make a plan of care for the children during his incarceration, and setting a section 366.26 permanency planning hearing for October 16, 2024.  We deny the petition as well as father's request for stay of the section 366.26 hearing.

## STATEMENT OF THE FACTS AND CASE

The mother of D.L. and A.C. had sole custody of the children.[3]  Father was incarcerated and allowed no visitation due to his history of sexually abusing the children's half sibling.  After mother died in May of 2022, the Fresno County Department of Social Services (department) assisted the family in creating a plan of care.  Maternal grandparents filed a petition for guardianship in probate court and were granted temporary guardianship February 6, 2023.  On February 8, 2023, the children's adult half sibling, H.F., filed an objection to the petition for appointment of guardian alleging that the maternal grandparents were not capable of or suitable to raise the children.  On June 28, 2023, the probate court determined that neither maternal grandparents nor H.F. were appropriate for guardianship and the children were placed on a section 300 hold, prompting a referral to the department.

---

[1]     All further references to the rules are to the California Rules of Court.

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[3]     Mother had five children, but only two, D.L. and A.C., are pertinent to this writ petition.

*Detention*

A team decision meeting (TDM) was held June 29, 2023. Father was not present, but it was uncertain whether father had been notified. The department attempted to contact father the following day but was unable to establish phone contact. A letter was mailed advising him of the department's involvement and the upcoming detention hearing.

On June 30, 2023, the department filed a section 300 petition, alleging under subdivision (d)(1) that the children were at substantial risk of being sexually abused by father because he had sexually abused their half sibling, father admitted to the sexual abuse and was incarcerated. The petition further alleged, pursuant to section 300, subdivision (g)(1), that mother was deceased and the children were left without provisions for ongoing care and support; and pursuant to subdivision (g)(2), that father was incarcerated and unable to make an appropriate plan for the children. At the time, father was listed as the presumed father of both children, but another person, R.C., was also listed as an alleged father of A.C., although he was later found not to be the parent.

The department's report filed in anticipation of detention stated that father was incarcerated and that the probate court had determined maternal grandparents and H.F. were not appropriate for guardianship. It was reported by the probate investigator that maternal grandparents were driving the children while intoxicated. The department made contact with the maternal grandparents, who denied the allegations, although both admitted past DUIs — maternal grandmother in 1995 and maternal grandfather in 2010 and 2016. Maternal grandfather also had a 1996 possession charge for methamphetamine. Both denied any current issues with drugs or alcohol, although both tested positive — maternal grandmother for opiates and maternal grandfather for THC. Maternal grandmother provided a prescription for Oxycodone. The children were placed with maternal grandparents, pending Resource Family Approval Program (RFA) approval.

3.

At the detention hearing July 3 and 5, 2023, father was not present. The children were detained and a combined jurisdiction and disposition hearing set for August 9, 2023.

*Section 388 Petition*

On July 25, 2023, paternal grandparents filed a section 388 petition requesting the children be placed with them. The petition alleged that both paternal grandparents were registered nurses, had a stable home, and could provide care for the children.

The petition was summarily denied on July 26, 2023, as the jurisdiction and disposition hearing had not yet taken place.

*Jurisdiction and Disposition Hearing*

The department's report prepared for the jurisdiction and disposition hearing recommended the allegations of the section 300 petition be found true and father be denied reunification services pursuant to section 361.5, subdivision (b)(6) and (12).[4]

At the August 9, 2023, jurisdiction and disposition hearing, both paternal grandmother and H.F. were excluded from the hearing. The juvenile court stated that they were being excluded because "the law doesn't allow it." Maternal grandmother was permitted to attend. Father appeared remotely.

The hearing was continued to October 4, 2023, and then November 1, 2023, due to Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) issues, and to allow father's counsel an opportunity to go over the department's report. Following additional continuances, the contested jurisdiction and disposition hearing was not heard until April 12, 2024.

_____

[4] Section 361.5, subdivision (b)(6) provides that reunification services need not be provided if the child has been adjudged a dependent of the juvenile court as the result of severe sexual or physical abuse to the child, a sibling, or half-sibling by a parent or guardian. Section 361.5, subdivision (b)(12) provides that reunification services need not be provided if the parent has been convicted of a violent felony, as defined in Penal Code, section 667.5, subdivision (c).

4.

At the contested hearing April 12, 2024, father appeared via Zoom, while in custody. The department submitted on the reports, asking that the juvenile court find the petition true, bypass services to father, and set a section 366.26 hearing. Counsel for the children agreed with the recommendations of the department.

Father called several social workers for testimony. Social Worker Rachel Ryan was an emergency responder and testified that she was involved with the family in 2022 when mother passed away and had worked "briefly" in 2023 on creating a plan of care for the children since father was incarcerated. Ryan acknowledged that she did not talk to father, did not send him any letters advising him of mother's passing or the department's involvement, or inquire whether he could make a plan of care. Following a recess at the department's request, the department made a motion to withdraw the section 300, subdivision (g)(2) allegation that father was incarcerated and unable to make a plan of care for the children. Counsel for the children consented.

Social Worker Nicole Perez testified that she was the emergency responder for the 2023 referral after the probate court found maternal grandparents and H.F. unsuitable for guardianship. While Perez testified father was noticed for all court hearings and proceedings, she acknowledged she did not make contact with him or speak to him directly. No other relatives other than maternal grandparents and H.F. were assessed for placement. Perez did not contact paternal grandparents. On cross-examination, Perez testified that she was involved with the case for "[m]aybe a week."

Social Worker Christina Mares testified that she worked in the family reunification department and had been the "carrying" social worker assigned to the case since June of 2023. Mares had not spoken to father in person, but had sent him letters regarding ICWA and informing him that the children were in the department's care. She had not asked father whether he had a plan of care for the children.

Mares testified that the department believed the children were at substantial risk of being sexually abused by father because he had sexually abused their half sibling. Mares

had not asked father if he had participated in any services because the "bypass panel" had bypassed him for services. Although father had been informed by voicemails of the "bypass panel," he did not attend the meeting. Mares thought, but was not certain, that she had sent father a letter informing him of the scheduling of the family reunification panel. Mares had sent father one or two letters, but had never communicated with him in person.

Mares testified that she did not complete a "family finding" because she believed one was already submitted before she got the case, as the children were already placed with maternal grandparents. Mares had spoken to paternal grandmother, who requested placement and visitation. Mares spoke to the children about paternal grandmother's request for visits, but they told her they did not want visits with them.

Mares testified that there were no concerns about the children in their current placement and the children reported feeling safe and liking where they were.

Paternal grandmother testified that she and her husband, both registered nurses, wanted to have the children placed with them. They had support from father, and their three other sons, two of whom were also registered nurses. According to paternal grandmother, she requested placement of the children as soon as the case started.

Paternal grandmother testified that she would be open to either legal guardianship or adoption, and she would allow the children to maintain their relationship with maternal grandparents. If the court ordered that the children have no contact with father, she would abide by that ruling.

On cross-examination, paternal grandmother acknowledged that she did not have a relationship with the children, as she never met A.C. and only met D.L. two or three times. Paternal grandmother testified that she had always been told that she was not allowed to see the children or that it wasn't a good time to visit.

Father testified that he is the father of both children, but that when mother passed away, he was not notified of her passing, and no one from the department contacted him

6.

to inquire if he could make a plan of care for the children. Father asked that the children be placed with paternal grandmother.

Father testified that he was sentenced to 25 years in prison on March 2, 2023, and believed he was eligible for parole in November of December of 2039. There were no appeals pending. Father testified that, while incarcerated, he participated in drug rehab therapy, life skills, parenting classes, domestic violence classes, criminal gangs anonymous, freedom to choose, celebrate recovery, and grief recovery classes. He planned to take more classes and was on the waiting list for some classes.

The remainder of the trial was continued to April 25, 2024, in order to address outstanding issues as to A.C.'s parentage.

On April 25, 2024, father appeared via Zoom while in custody. The juvenile court first heard R.C.'s request to be elevated to presumed father status of both children.

Closing arguments were then made. Counsel for the department again asked that the juvenile court find the petition true, as amended, and that services be bypassed father. Counsel further argued against R.C.'s being elevated to presumed father status. Counsel for the children stated she was in agreement with the department's recommendations.

Father's counsel agreed with the department's stance on R.C., but objected to jurisdiction and disposition. Counsel argued that, since father's parole date was years away, it was physically impossible for father "to abuse the children in any way." And, she argued, father had a right to make a plan for the care of his children and that he did have such a plan with paternal grandparents, but that the department never contacted him about such a plan.

The children's counsel then argued that, while a parent does not lose his children just because he is incarcerated, in this case, after the dissolution of mother and father's marriage, mother was given sole legal and physical custody of D.L. and father allowed no visitation. As for A.C., counsel argued he was not listed as a child of that marriage and

7.

father may not have been "in the position to even legally make arrangements for the care of the children."[5]

The department was in agreement with children's counsel as to father not being in a position to make a plan. As for jurisdiction, counsel argued that incarceration did not prevent a person from exposing a child to sexual abuse. Counsel further argued that, since the section 300, subdivision (g)(2) allegation against father was withdrawn, it did not think father's ability to make a plan was "appropriate or warranted or relevant to the issues at hand."

The juvenile court continued the hearing to May 17, 2024, and subsequently to June 20, 2024, after an addendum report on ICWA issues was requested by the juvenile court.

In its June 20, 2024, ruling, the juvenile court found R.C. not to be the presumed father of either child and he was dismissed from the proceedings. The juvenile court then found the allegations of the petition as to father true, denied father's request to make a plan of care for the children, and bypassed reunification services for father pursuant to section 361.5, subdivision (b)(6) and (12). In doing so, the juvenile court specifically found that father's "stated plan of care" to send the children with paternal grandparents was concerning, in that paternal grandparents had no relationship with D.L. and had never even met A.C. The court stated further,

> "There is no indication as to whether or not [father's] parents believe that he sexually abused the child. There is no indication that they would protect the child or the children from [father]. There would be no weight to his plan or placement, as even with Court oversight, at any time the Court oversight ended, he would have the ability to move the children anywhere he wanted. If count (d-1) was not found true, he could do literally anything he wanted with the children.

---

[5] The record suggests mother and father separated in April of 2019, (the half sibling had disclosed sexual abuse allegations against father in April 2019), judgment of dissolution was signed in July of 2019, and A.C. was born in October of 2019.

"The Court notes again regarding placement that the Department made absolutely no argument or request based on [father's] custodial status. The Department's arguments, evidence, and requests are based on [father's] conduct. It is [father] who wishes to argue that because he is in prison for horrific sexual abuse of the children's sibling that renders him a safe and appropriate person to have the children and to have the ability to conduct where they will be."

A section 366.26 permanency planning hearing was set for October 16, 2024.

## DISCUSSION

Father asserts there is no substantial evidence to support jurisdiction under section 300, subdivisions (d) and (g), specifically in denying his request to make a plan of care for his children during his incarceration.

### *Standard of Review*

We review the court's jurisdictional findings for substantial evidence. " 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence ... such that a reasonable trier of fact could find the order is appropriate]." ' " ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) " 'Substantial evidence is evidence that is "reasonable, credible, and of solid value"; such that a reasonable trier of fact could make such findings.' " (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140; see *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394.) "The appellant has the burden of showing there is no evidence of a

sufficiently substantial nature to support the findings or order." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

In the present matter, the juvenile court sustained the petition under section 300, subdivisions (d) and (g).

*Section 300, subdivision (g)*

We first address section 300, subdivision (g), which provides for jurisdiction of a child if:

> "[(1)] The child has been left without any provision for support; [(2)] physical custody of the child has been voluntarily surrendered pursuant to Section 1255.7 of the Health and Safety Code and the child has not been reclaimed within the 14-day period specified in subdivision (g) of that section; [(3)]the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child; or [(4)] a relative or other adult custodian with whom the child resides or has been left is unwilling or unable to provide care or support for the child, the whereabouts of the parent are unknown, and reasonable efforts to locate the parent have been unsuccessful."

None of the four statutory criteria for establishing dependency under section 300, subdivision (g) trumps any other. (*In re E.A.* (2018) 24 Cal.App.5th 648, 662.) Section 300, subdivision (g) applies, in the first instance, when a parent does not arrange for a child to be cared for by another, for instance, when a child has been abandoned. (*Ibid.*) Here, the petition alleged, pursuant to section 300, subdivision (g), Count g-1, that the children had been "left without any provision for their ongoing care and support in that their mother … is deceased." Father does not contest this allegation.

" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the [child] if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re I.J., supra,* 56

Cal.4th at pp. 773-774.) Jurisdiction over the children pursuant to section 300, subdivision (g) is therefore proper.

Because we find jurisdiction proper under section 300, subdivision (g), we will nonetheless address father's allegation that, under subdivision (g), the juvenile court erred in denying him an opportunity to make a plan of care for the children. Father is referring to the section 300, subdivision (g), Count g-2, which alleged the children had been left without any provisions for their ongoing care and support due to father's incarceration and his inability to make a plan for their ongoing care and support.

It is true that section 300, subdivision (g), in the third instance as outlined above, applies when, at the time of the jurisdiction hearing, "a parent has been incarcerated and does not know how to make, or is physically or mentally incapable of making, preparations or plans for the care of his or her child." (*In re Aaron S.* (1991) 228 Cal.App.3d 202, 208.) Incarceration, without more, cannot provide a basis for jurisdiction. (*In re Noe F.* (2013) 213 Cal.App.4th 358, 366; see also *In re S.D.* (2002) 99 Cal.App.4th 1068, 1077 ["There is no 'Go to jail, lose your child' rule in California"].) Moreover, section 300, subdivision (g) "requires only that an incarcerated parent arrange adequately for the care of the child during the period of his or her incarceration." (*In re Monica C.* (1995) 31 Cal.App.4th 296, 305.)

The section 300, subdivision (g), Count g-2 allegation was, however, withdrawn by the department on April 12, 2024. The juvenile court, in its ruling, specifically stated that it found Count g-1 true, as mother was deceased. It further stated that Count g-2 need not be considered because it had been previously withdrawn by the department.

Therefore, sufficient evidence establishes jurisdiction over the children pursuant to section 300, subdivision (g), and we reject any claim by father to the contrary.

### Section 300, subdivision (d)

Father also argues that there is insufficient evidence to sustain the allegation that his children were at risk of harm pursuant to section 300, subdivision (d). Again, while

11.

we need not address this claim, as jurisdiction has already been established, we do so out of an abundance of caution.

The section 300 petition alleged, pursuant to subdivision (d) that the children were "at substantial risk of being sexually abused by their father, … in that their half sibling was sexually abused by [father]. In April 2019, the children's half sibling disclosed sexual abuse by [father]. The sexual abuse consisted of, but is not limited to oral copulation, finger penetration and sodomy. [Father] admitted to the sexual abuse and is incarcerated."

Section 300, subdivision (d), provides, in relevant part, as follows: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent of the court: [¶] ... [¶] (d) The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by the child's parent or guardian or a member of the child's household."

Sexual abuse under Penal Code section 11165.1 includes both sexual assault and sexual exploitation. Subdivision (a) provides:

" 'Sexual assault' means conduct in violation of one or more of the following sections: Section 261 (rape), subdivision (d) of Section 261.5 (statutory rape), Section 264.1 (rape in concert), Section 285 (incest), Section 286 (sodomy), Section 287 or former Section 288a (oral copulation), subdivision (a) or (b) of, or paragraph (1) of subdivision (c) of, Section 288 (lewd or lascivious acts upon a child), Section 289 (sexual penetration), or Section 647.6 (child molestation). 'Sexual assault' for the purposes of this article does not include voluntary conduct in violation of Section 286, 287, or 289, or former Section 288a, if there are no indicators of abuse, unless the conduct is between a person 21 years of age or older and a minor who is under 16 years of age." (Pen. Code, § 11165.1, subd. (a).)

And subdivision (b) states:

"Conduct described as 'sexual assault' includes, but is not limited to, all of the following: [¶] (1) Penetration, however slight, of the vagina or anal

opening of one person by the penis of another person, whether or not there is the emission of semen. [¶] (2) Sexual contact between the genitals or anal opening of one person and the mouth or tongue of another person. [¶] (3) Intrusion by one person into the genitals or anal opening of another person, including the use of an object for this purpose, except that, it does not include acts performed for a valid medical purpose. [¶] (4) The intentional touching of the genitals or intimate parts, including the breasts, genital area, groin, inner thighs, and buttocks, or the clothing covering them, of a child, or of the perpetrator by a child, for purposes of sexual arousal or gratification, except that it does not include acts which may reasonably be construed to be normal caretaker responsibilities; Interactions with, or demonstrations of affection for, the child; or acts performed for a valid medical purpose. [¶] (5) The intentional masturbation of the perpetrator's genitals in the presence of a child." (Pen. Code, § 11165.1, subd. (b).)

Here, father was convicted in March of 2023 of felony counts of Penal Code sections 664/288, subdivision (a) (attempted lewd and lascivious acts on a child under the age of 14); Penal Code, section 288, subdivision (b)(1) (lewd and lascivious acts with force on a child under the age of 14); and Penal Code section 288.5 (continuous sexual abuse of a child). Thus, father's convictions fit within the definition of Penal Code section 11165.1.

We note further that there is an evidentiary presumption set forth in section 355.1, subdivision (d), which provides that: "Where the court finds that ... a parent ... of[ ] a minor who is currently the subject of the petition filed under Section 300[ ] has been previously convicted of sexual abuse ... or [ ] is required, as the result of a felony conviction, to register as a sex offender pursuant to Section 290 of the Penal Code, that finding shall be prima facie evidence in any proceeding that the subject minor is a person described by subdivision (a), (b), ( c), or (d) of Section 300 and is at substantial risk of abuse or neglect." The presumption "evinces a legislative intent that sexual abuse of someone else, without more, at least *supports* a dependency finding." (*In re I.J., supra,* 56 Cal.4th at p. 779; see also *In re S.R.* (2020) 48 Cal.App.5th 204, 222.) The rule states that this applies to a "parent… who resides with, or has the care or custody of, a minor who is currently the subject of the petition …." (§ 355.1, subd. (d).) This includes

noncustodial parents as well. (*In re John S.* (2001) 88 Cal.App.4th 1140, 1145.) Thus, father, who was required to register as a sex offender pursuant to Penal Code section 290, meets the fourth criteria that supports a presumption of substantial risk under section 355.1, subdivision (d).

The question before the juvenile court was whether father's convictions posed a risk of harm to the children, who were not the victims of father's convictions, of being sexually abused by father.

A child is described by section 300 subdivision (d) if "there is a substantial risk that the child will be sexually abused." " '[I]n order to determine whether a risk is substantial, the court must consider both the likelihood that harm will occur and the magnitude of potential harm ….' " (*In re I.J., supra,* 56 Cal.4th at p. 778.) There is a split in authority over whether a child who is the opposite sex of the abused sibling is at risk of sexual abuse. The California Supreme Court held in *In re I.J.* that when a parent severely sexually abuses his own child, the court may assume jurisdiction over, and take steps to protect, the child's siblings, regardless of whether the sibling is the opposite sex. (*Id.* at p. 780.) Similarly, the Second District has upheld dependency jurisdiction of a father's sons and daughters, who resided with him at the time the abuse occurred, upon finding that he sexually abused his girlfriend's daughter, who resided with him. (*In re Ana C.* (2012) 204 Cal.App.4th 1317, 1332.)

In the instant case, father does not argue whether the children's sibling suffered severe sexual abuse or whether the children are at risk of abuse despite being of the opposite sex of their sibling. Rather, father argues the children are not at risk of sexual abuse because he "is serving a 25-year sentence, is not eligible for parole until 2039, has no appeal pending, and his time for appeal has expired." Father attempts to distinguish his case from that in *In re Carlos T.* (2009) 174 Cal.App.4th 795 in which the court sustained the section 300, subdivision (d) allegation against the father, finding that the risk of sexual abuse to the child was ongoing despite the fact that the father was

14.

convicted of sexual abuse. The court reasoned that time for appeal had not lapsed at the time of the jurisdictional hearing and there was a possibility that he could be released from custody if his conviction was reversed. The father also failed to acknowledge the abuse he caused the child. (*In re Carlos T., supra,* at p. 806.)

The findings by the *In re Carlos T.* court are based on the particular facts of that case, and do not discuss or address whether or not its finding would be the same if the time to appeal had lapsed at the time the jurisdiction hearing was able to take place, or if a change in legislation retroactively affected the father's sentence or eligibility for parole. (see *In re Carlos T., supra,* 174 Cal.App.4th at p. 806.) Specifically, the reviewing court stated that, if there is "a possibility that father would be released from custody, and there is every reason to believe that father would resume his sexual abuse," the risk existed. (*Ibid.*)

Here, we find substantial evidence to support the juvenile court's finding of jurisdiction. In sum, the juvenile court properly considered father's failure to rebut the presumption of section 355.1, subdivision (d) in assuming jurisdiction of the children under section 300, subdivision (d). Moreover, even without the presumption, substantial evidence supports the juvenile court's findings of jurisdiction. The fact that father was in custody at the time of the jurisdiction hearing and that he was not eligible for parole until 2039, was not a guarantee that the children are protected from father until they reach the age of majority. As stated by the juvenile court:

> "It is impossible for anyone to predict the future. It is impossible to predict when someone may be released or what circumstances could change in the law regarding sentencing. What changes in the law may have some retroactive applicability."

Father also argues that the children are not at risk because he has acknowledged the abuse of the children's sibling and has taken steps to rehabilitate himself. The evidence, however, supports the juvenile court's finding that, contrary to father's assertions, he had not taken steps to rehabilitate himself regarding sexual abuse of

15.

children. Father testified that he participated in drug rehab therapy, life skills classes, parental classes, criminal and gangs anonymous, a freedom to choose program, celebrate recovery, and grief recovery. The juvenile court found father's acts upon the children's sibling "highly egregious," but that father failed to present any evidence at the contested hearing that any of these courses or programs he claimed to have taken addressed or rehabilitated those who sexually abuse minors.

We find substantial evidence to support the juvenile court's finding that the children are described under section 300, subdivision (d), and reject father's claims to the contrary.

## DISPOSITION

Father's petition for extraordinary writ and request for stay are denied. The orders of the juvenile court are affirmed.